UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------x
WILLIAM CARBONE and                 :
JACQUELYN CARBONE,                  :
                                    :
                 Plaintiffs,        :
                                    :
v.                                  :  Civil No.3:07CV01489(AWT)
                                    :
FIRST NLC FINANCIAL SERVICES,       :
LLC, and JOHN CASTODIO,             :
                                    :
                 Defendants.        :
------------------------------------x
```

<u>ORDER RE MOTION FOR SUMMARY JUDGMENT</u>

The plaintiffs, William Carbone and Jacquelyn Carbone, have moved for summary judgment on the second count of their complaint against defendant John Castodio ("Castodio") for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a <u>et</u> <u>seq</u>. ("CUTPA").  For the reasons set forth below, the motion for summary judgment is being granted.

**I. FACTUAL BACKGROUND**

The plaintiffs reside in North Haven, Connecticut.  In October 2006, the plaintiffs contacted defendant First NLC Financial Services, LLC ("NLC") to refinance their residential mortgage.  The plaintiffs worked with defendant Castodio, who was an employee of NLC.  During discussions about the loan application, Castodio told the plaintiffs that, for the first two years of the loan, the plaintiffs' monthly payments would be $1,550.

On or about October 19, 2006, a notary public arrived at the

plaintiffs' home for the closing on the refinance loan.  During the closing, the plaintiffs saw for the first time that monthly payments were $1,850.52, i.e., approximately $300 more than Castodio told them.  Jacquelyn Carbone contacted Castodio during the closing.  She discussed with Castodio the discrepancy in the amount of the monthly payments.  Castodio informed Jacquelyn Carbone that the first monthly payment would not be due until January 2007.  He further informed her that NLC would do an in-house refinance to lower the monthly payments to the agreed upon amount of $1,550.

In reliance upon Castodio's representation, the plaintiffs proceeded with the closing.  Thereafter, the plaintiffs received a bill for the first monthly payment in the amount of $1,850.52, with a due date of December 1, 2006.  Jacquelyn Carbone contacted Castodio to discuss the bill.  Castodio informed her that there had been a computer glitch and that he would work with the mortgage servicer to correct the bill.  He also told her not to pay the bill.  Thereafter, the plaintiffs received numerous collection telephone calls related to the unpaid bill.  The plaintiffs paid the bill and continued to ask Castodio about the in-house refinance to reduce the amount of the bill for the monthly payment to $1,550. The in-house refinance was never done.  Ultimately, the plaintiffs were unable to make the monthly mortgage payments and had to move out of their home.

2

## II.   LEGAL STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. <u>See</u> Rule 56(c), Fed. R. Civ. P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's case. <u>See</u> <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  The court construes the facts in the light most favorable to the nonmoving party. <u>See</u> <u>Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.</u>, 444 F.3d 158, 162 (2d Cir. 2002), <u>cert. denied</u>, 127 S. Ct. 382 (2006).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of an unspecified disputed material fact or offer speculation or conjecture. <u>See</u> <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990).  If the nonmoving party does not respond to the motion, the court may accept as true the moving party's factual statements. <u>See</u> D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in [the moving party's Rule 56(a)1] statement will be deemed admitted unless controverted....).  Even if the motion is unopposed, however, the court will not grant summary judgment unless it determined that the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Vermont Teddy Bear Co. v. 1-800 Beargram Co.</u>,

3

373 F.3d 241, 242 (2d Cir. 2004).

### III.  DISCUSSION

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b" may bring a civil action pursuant to CUTPA.  Conn. Gen. Stat. § 42-110g.  Connecticut courts have adopted the Federal Trade Commission's "cigarette rule" used to ascertain whether a practice is unfair, looking at the following factors:

> (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

Ventres v. Goodspeed Airport, LLC, 275 Conn. 105, 155 (2005) (citation omitted).

"[T]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . .  An ascertainable loss is a deprivation, detriment [or] injury that is

4

capable of being discovered, observed or established. . . .  A
plaintiff need not prove a specific amount of actual damages in
order to make out a prima facie case [under CUTPA]." Devan Motors
of Fairfield, Inc. v. Infiniti Division of Nissan North America,
Inc., 579 F. Supp. 2d 294, 308 (D. Conn. 2008)(internal quotation
marks omitted; citations omitted).

The plaintiffs contend that Castodio violated CUTPA by making
intentional mispresentations to the plaintiffs.  The court agrees.

In October 2006, Castodio agreed on behalf of NLC that the
plaintiffs' monthly payments would be $1,550 for the first two
years.  During the closing, the plaintiffs contacted Castodio and
were reassured that an in-house refinance would be done so the
bills for their monthly payments were $1,550, as had been agreed.
Additionally, after the plaintiffs received their first bill,
Castodio reassured them that an in-house refinance was in progress.

The plaintiffs suffered substantial injury as a result of
Castodio's actions and misrepresentations.  There is no issue of
material fact as to whether Castodio misrepresented and misled the
plaintiffs about what the amount of their monthly payments would be
and thus engaged in conduct that was immoral, unethical,
oppressive, or unscrupulous.  See, e.g., IndyMac Bank, F.S.B. v.
Reyad, No. 3:00CV835(CFD), 2006 WL 2092621, *5 (D. Conn. July 26,
2006)(finding that in breach of contract "intentional and willful
dishonesty was immoral, unethical, oppressive, or unscrupulous.").

Because the court has concluded that there is no genuine issue

of material fact as to whether Castodio violated the second prong
of the "cigarette rule," it need not address whether an issue of
material fact exists as to the other two prongs.  See Ventres v.
Goodspeed Airport, LLC, 275 Conn. 105, 154 (Conn. 2005) (explaining
that "[a]ll three criteria do not need to be satisfied to support a
finding of unfairness" and "[a] practice may be unfair because of
the degree to which it meets one of the criteria or because to a
lesser extent it meets all three").

    Thus, Castodio violated CUTPA, and the plaintiffs are entitled
to summary judgment on the second count of their complaint.
Pursuant to Conn. Gen. Stat. § 42-110g(a), the plaintiffs are
entitled to actual damages for any ascertainable loss of money or
property resulting from Castodio's misrepresentations.  The
plaintiffs are entitled to actual damages in the amount of
$7,212.48, which is the difference between the agreed upon monthly
payment of $1,550 and the charged monthly payment of $1,840.52,
over a two year period.

    The plaintiffs also seek punitive damages pursuant to Conn.
Gen. Stat. § 42-110g(a).

> In order to award punitive or exemplary damages, evidence
> must reveal a reckless indifference to the rights of others
> or an intentional and wanton violation of those rights. .
> . .  Accordingly, when the trial court finds that the
> defendant has acted recklessly, [a]warding punitive damages
> and attorney's fees under CUTPA is discretionary.

Chiverton v. Federal Financial Group, Inc., 399 F. Supp. 2d 96,
102-103 (D. Conn. 2005).

CUTPA itself provides no guidance as to a method for determining the amount of a punitive damages award. . . . Nevertheless, several methods have gained acceptance by the courts in Connecticut. . . . By common practice, courts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages. . . . Many courts have followed the lead of the district court in Bailey Employment Sys. v. Hahn, 545 F.Supp. 62, 73 (D. Conn. 1982), in doubling the amount of actual or compensatory damages.

. . .

In the absence of an explicit formula or prescribed method for determining the amount of punitive damages in this case, the court takes as its guiding principle that the purpose of awarding punitive damages under CUTPA is to deter future deceptive or unfair business practices by the defendants and others. . . . Thus, federal courts in this district have noted that, although "Section 42-110g does not specify how punitive damages are to be measured ... the award should serve the broad remedial goals of eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices." . . . Similarly, Connecticut courts have also held that a defendant's financial standing is relevant to a determination of the amount of punitive damages to award for a CUTPA violation. . . . Accordingly, a punitive damages award under CUTPA should take account of the financial status and size of the defendant to ensure that the damage award will have the deterrent effect on the defendant and others that it is designed to achieve.

Emerald Investments, LLC v. Porter Bridge Loan Co., No. 3:08-cv-1598(JCH), 2007 WL 1834507, *8-9 (D. Conn. June 25, 2007).

Here, Castodio made misrepresentations to the plaintiffs with a reckless indifference to the plaintiffs' rights. Considering the deterrent effect of awarding punitive damages, and the plaintiffs' actual damages, the court concludes that an award of $5,000 in punitive damages is appropriate.

Lastly, the plaintiffs seek an award of attorneys' fees and

costs, pursuant to Conn. Gen. Stat. § 42-110g(d), totaling $7,730.80.  The court finds the requested amount for attorneys' fees and costs to be reasonable, and substantiated by the records submitted by the plaintiffs.  See, e.g., Emerald Investments, LLC v. Porter Bridge Loan Co., 2007 WL 1834507 (D. Conn. June 25, 2007).

**IV.  CONCLUSION**

For the reasons set forth above, plaintiffs' Motion for Summary Judgment (Doc. No. 41) is hereby GRANTED.  The Clerk shall enter judgment, with respect to the second cause of action, i.e., the CUTPA claim, in favor of the plaintiffs against defendant John Castodio in the amount of $19,943.28, representing $7,212.48 in actual damages, $5,000 in punitive damages, and $7,730.80 for attorneys' fees and costs.

The Clerk shall close this case.

It is so ordered.

Signed this 4th day of May, 2010 at Hartford, Connecticut.


                                    /s/AWT
                              Alvin W. Thompson
                         United States District Judge